IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA E. DOUGLASS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 07-685 |
| PENN HILLS BOROUGH, et al., | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Plaintiff Teresa E. Douglass asserts three claims arising under 42 U.S.C. § 1983 against Defendant Officers Anthony N. Diulus, Snyder and William Long (collectively, the "Individual Defendants") and Defendant Penn Hills Borough ("Penn Hills"). In Count I of her Amended Complaint, Plaintiff alleges that the Individual Defendants used excessive force in arresting her, specifically by applying handcuffs too tightly and failing to loosen them in response to her requests and cries of pain. In Count II, Plaintiff alleges a claim for malicious prosecution against Defendants Diulus and Snyder, based on her subsequent arrest pursuant to a warrant. In Count III, Plaintiff alleges that Defendant Penn Hills Borough, by reason of improper training and policies, is liable for the Individual Defendants' use of excessive force.

Defendants have moved to dismiss the Amended Complaint on the grounds that (1) Plaintiff has failed to state a claim for excessive force or malicious prosecution, (2) Plaintiff's expungement of her criminal case resulted in the destruction of crucial evidence; and (3) that the Individual Defendants are protected by qualified immunity. For the reasons set forth below, Defendants' motion to dismiss is denied in its entirety.[1]

A. APPLICABLE LEGAL STANDARDS

In deciding a motion to dismiss under Fed R. Civ. P. 12(b)(6), all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Haspel v. State Farm Mut. Auto. Ins. Co., 2007 WL 2030272, at *1 (3d Cir. July 16, 2007). "The issue is not whether the plaintiff will prevail at the end but only whether [she] should be entitled to offer evidence to support [her] claim." Williams v. Sebek, 2007 WL 790386, at *1 (W.D. Pa. Mar. 14, 2007) (citing Neitzke v. Williams, 490 U.S. 319 (1989)).

B. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on May 24, 2005, she had an adverse reaction to a prescription medication and began hallucinating. She suffered disorientation, paranoia, anxiety and extreme discomfort as a result of the medication. In an attempt to relieve her anxiety, and unable in her disorientation to open the door

---

[1] I note that Defendants' brief was submitted in an improperly small font, no doubt in order to meet this Court's 20-page limit. Defendants' reply brief was stricken by the Court for failure to conform to my page limit and font size rules. The resubmitted reply brief still contained improperly small footnotes. These rules exist, in part, to insure a level playing field between the parties. Any future failures to comply will not be accepted.

to the house, she exited her house through a window and began wandering around her Penn Hills property. As a result of exiting through the window, Plaintiff set off a burglar alarm which sounded in the Penn Hills Police Station. Plaintiff also alleges the possibility that one of her neighbors may have called the police.

Plaintiff acknowledges that she carried a purse which "apparently" contained a revolver licensed to her husband. According to Plaintiff, the revolver did not have a magazine and could not be discharged. She denies any experience with pistols. She also states that she "had discarded or lost a second firearm."

When officers from the Penn Hills Police Department, led by the Individual Defendants, arrived at the scene, Plaintiff claims that, due to the reaction to the medication, she was not even aware of their approach. She did not resist in any manner. The officers, including Defendants Diulus and Snyder, tackled her, sat on her chest, and handcuffed her.

The handcuffs, applied by Defendant Diulus to Plaintiff's wrists, were very tight and compressed her carpel tunnel nerve, causing excruciating pain. Plaintiff began screaming because of the pain, begging the Individual Defendants to loosen the handcuffs. The Individual Defendants ignored her cries and requests.

The Individual Defendants spoke with Plaintiff's husband and a witness at the scene. The Individual Defendants were informed that Plaintiff was likely having a psychotic episode, possibly as a result of medication she had taken.

Plaintiff was subsequently lifted off the ground and thrown into the back of the police cruiser, causing further pain. She continued to scream in pain during the

ride to the police station. At the police station, the Individual Defendants, after discussion with their supervisors, decided that Plaintiff would be subjected to a 302 commitment at Forbes Regional Hospital. Despite her continued requests and cries of pain, the Individual Defendants' supervisors did not direct the Individual Defendants to loosen the handcuffs. She was then returned to a police vehicle, still cuffed and "scream[ing] in agony," and transported to the Hospital. The cuffs were not loosened until security at the Hospital took control of Plaintiff.

Plaintiff was admitted to the Hospital where she exhibited signs of drug-induced psychosis. Her wrists were "severely bruised, bloody, and injured." She remained in the Hospital for several days and her condition improved.

Despite having been informed that Plaintiff's behavior resulted from a reaction to medication, Defendant Snyder prepared a criminal complaint against her, with Defendant Diulus as affiant, and the complaint was filed. According to Plaintiff, Defendant Diulus lacked probable cause for the criminal charge given his knowledge that her actions resulted from medication she had taken.

Plaintiff was released from the Hospital early in the day. Nevertheless, she was arrested after the local district office closed, resulting in incarceration overnight in the Allegheny County jail while she awaited arraignment and bail. Plaintiff spent over 24 hours in jail, and an additional 10 hours before she was released after posting bail. Plaintiff had never been arrested before. The criminal charges eventually were heard by the District Judge and dismissed.

As a result of the tightness of the handcuffs, Plaintiff has suffered "intense,

persistent and long lasting pain." She received treatment for the injuries to her wrists, including a regimen of pain medications. She was rendered unable to perform her occupation and lost her job. She eventually underwent carpel tunnel surgery on both her wrists to correct the injuries caused by the handcuffs. As a result of losing her job, Plaintiff was forced to file for bankruptcy.

C. <u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

As a general matter, Defendants' motion fails because it improperly relies on evidentiary material outside the boundaries of the Amended Complaint and, not surprisingly, presents arguments more appropriate for a motion for summary judgment than the motion to dismiss currently before me. I explain in greater detail below.

1. <u>Claims Alleging Excessive Force</u>

Defendants move to dismiss Count I of the Amended Complaint and that part of Count III alleging excessive force in violation of Plaintiff's Fourth Amendment rights. Defendants' argument seems to assert two points: (1) that Plaintiff has failed to allege an injury requiring *immediate* attention; and (2) absent such an injury, Defendants must as a matter of law have used a reasonable degree of force under the circumstances.

In order to assert a claim under § 1983 for excessive force, a plaintiff must allege that "a seizure occurred and that it was unreasonable." <u>Kopec v. Tate</u>, 361 F.3d 772, 776 (3d Cir.), <u>cert. denied</u>, 543 U.S. 956 (2004). Defendants do not dispute that handcuffing and arresting an individual constitutes a seizure. Accordingly, the only

issue is whether Plaintiff has adequately alleged that the seizure was unreasonable.

Plaintiff has alleged that the handcuffs were secured "so tight to [her] wrists that they compressed her carpel tunnel nerve and caused her excruciating pain." (Amended Complaint, ¶ 15.) She further alleged that she repeatedly cried out in pain and requested that Defendants loosen the handcuffs, and that Defendants ignored her cries and entreaties during the ride to the police station, while at the police station and during the subsequent ride to the hospital. (Id. at ¶¶ 16, 18, 19, 29.) As a result of the tightness of the cuffs, Plaintiff's wrists were "severely bruised, bloody, and injured." (Id. at ¶ 20.) She received treatment for these injuries, including a regimen of pain medication and, eventually, carpel tunnel surgery on both her wrists. (Id. at ¶ 30.) These allegations meet the pleading requirements for an excessive force claim. See, e.g., Snell v. City of York, 2007 WL 1412061, at *4 (M.D. Pa. May 10, 2007) (denying motion to dismiss excessive force claim where the plaintiff alleged that "the handcuffs were too tight, cut off his circulation, and left his hands sore and bruised").

Defendants' position that Plaintiff must allege the need for immediate treatment is unsupported by case law. The cases cited by Defendants are all in the context of motions for summary judgment, where the extent of the injury and need for treatment is one factor among many analyzed by the court in determining whether a defendant's use of force was reasonable. See Giles v. Davis, 427 F.3d 197, 208 (3d Cir. 2005) (granting summary judgment for defendant police officer where there was "insufficient evidence as a matter of law for excessive force by

handcuffing"); James v. York Cty. Police Dep't, 2005 WL 1154500, at * 9 (M.D. Pa. May 6, 2005), aff'd, 2005 WL 3313029 (3d Cir. 2005) (granting summary judgment for defendant police officer on issue of qualified immunity), cert. denied, 127 S.Ct. 210 (2006); Donahue v. Beers, 2006 WL 2788221, at *1 (W.D. Pa. Sept. 26, 2006) (same). Indeed, Defendants' own case law recognizes that "the absence of physical injury does not *ipso facto* mean that the force used was not excessive." James, 2005 WL 1154500, at *9.

In making their argument with respect to the reasonableness of the force used, Defendants rely not on the allegations of the Amended Complaint, but rather on the Penn Hills Police Department Incident Investigation Report, which they have annexed to their motion. "[A] court can consider certain narrowly defined types of material without converting the motion to dismiss" to a motion for summary judgment. In re Rockefeller Ctr. Props. Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). For example, the court can consider 'a document integral to or explicitly relied upon in the complaint" or an "undisputedly authentic document. . .if the plaintiff's claims are based on the document." Id. Here, the only reference to the Investigation Report contained in the Amended Complaint occurs in paragraph 22, where Plaintiff notes that "[a]ccording to the police report, the complaint was prepared by Officer Snyder." Plaintiff does not otherwise refer to or rely on the Investigation Report for her claims.

In Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002), a case relied upon by Defendants herein, the Third Circuit found no error in the district

court's consideration on a motion to dismiss of a decision in a similar case involving the plaintiff's counsel. The Third Circuit explained: "[W]e discern no error with the district court's references to the *Cureton* litigation, as the body of the complaint itself expressly references the findings and statements made in that factually similar case. Contrary to [the p]laintiff's argument, moreover, the district court did not appear to cite *Cureton for purposes of assessing the truth of the factual allegations in this case*. . .; rather, the court cited *Cureton* as precedent only." Id.. (emphasis added.) See also, Evans v. MAAX-KSD Corp., 2006 WL 3488708, at *2 (E.D. Pa. Nov. 30, 2006) (court will consider plaintiff's EEOC complaint on motion to dismiss only for limited purpose of determining whether the plaintiff exhausted his administrative remedies).

By contrast, Defendants herein seek to use the police investigation reports to contradict the allegations of the Amended Complaint. ( Def. Br. at 6.) This is clearly impermissible. See, e.g., Garlanger v. Verbeke, 223 F. Supp.2d 596, 606 n.4 (D.N.J. 2002) (district court refused to consider police investigation reports attached to defendant police officers' motion to dismiss §1983 action); Black v. North Hills Sch. Dist., 2007 WL 2728601, at *2 (W.D. Pa. Sept. 17, 2007) (declining to consider medical records and notes submitted by defendant in support its motion to dismiss, especially where no discovery had taken place). Accordingly, the purported facts set forth in the police investigation report will not be considered for purposes of

8

this Motion to Dismiss.[2]

Since Plaintiff's allegations meet the pleading requirements for a claim of excessive force under 42 U.S.C. § 1983, I deny Defendants' motion to dismiss Counts I and III of the Amended Complaint.

### 2. Claims Alleging Malicious Prosecution

In Counts II and III of the Amended Complaint, Plaintiff asserts claims for malicious prosecution against Defendants Diulus, Snyder and Penn Hills, respectively. "In order to successfully plead a § 1983 Fourth Amendment malicious prosecution claim a plaintiff must allege that: '(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the criminal proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding.'" Lopez v. Maczko, 2007 WL 2461709, at *3 (E.D. Pa. Aug. 16, 2007)(quoting Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007)).

Here, Plaintiff has alleged that Defendants Diulus and Snyder caused a criminal complaint to be issued against her, leading to her incarceration overnight.

---

[2]Similarly, I will not consider allegations contained in Plaintiff's original Complaint which have not been realleged in the Amended Complaint.  See Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit."); Emcore Corp. V. PriceWaterhouseCoopers LLP, 102 F. Supp.2d 237, 264 (D.N.J. 2000) (denying motion to dismiss where defendant's argument relied on allegations contained in original complaint but deleted from amended complaint); In re General Motors Class E Stock Buyout Sec. Litig., 694 F. Supp. 1119, 1122 n.2 (D. Del. 1988) (in deciding motion to dismiss, court will consider only allegations contained in Second Amended Consolidated Complaint, not material included in earlier complaints that had been deleted from Second Amended Consolidated Complaint).

(Amended Complaint, ¶32.) These Individual Defendants lacked probable cause to file a criminal complaint against her because they were aware that her actions resulted from a reaction to medication she had taken. (Id. at ¶33.) Defendants Diulus and Snyder acted in bad faith and with improper and malicious motives. (Id. at ¶ 37.) The charges in the criminal complaint were subsequently dismissed by the District Magistrate. (Id. at ¶35.) With respect to Defendant Penn Hills , Plaintiff further alleges that it "lacked appropriate procedures, policies and guidelines concerning oversight monitoring and review of officers' decisions to file a criminal complaint, or to cause arrest warrants to be issued, and the execution of arrest warrants such that it participated in, or was deliberately indifferent to, the wrongful initiation and use of process engaged in by Diulus and Snyder when they charged [Plaintiff] with crimes knowing there was no criminal behavior." (Id. at ¶45.) These allegations adequately plead a claim for malicious prosecution.

Defendants argue that Plaintiff "does not establish the second prong of that test requiring a favorable disposition." (Def. Reply Br. at 4.) Once again, Defendants confuse the standards applicable on a motion for summary judgment with the Court's obligations on a motion to dismiss. Defendants submit yet more documentary evidence, this time in the form of the Arraignment Docket, and argue that the "record is silent on disposition." (Id. at 5.) However, on a motion to dismiss, the Court is not concerned with the "record" but the *pleadings*, which clearly allege a disposition in Plaintiff's favor. Similarly, the case law relied upon by Defendants involves the disposition of plaintiffs' criminal proceedings in the summary judgment

10

context.  See Steele v. City of Erie, 2004 WL 2360160, at *3 (3d Cir. Oct. 20, 2004) (affirming grant of summary judgment on malicious prosecution claim where plaintiff must *prove* actual innocence as element of his prima facie case and the appellant's own *deposition testimony* demonstrates that the dismissal resulted from a plea bargain); Johnson v. City of Phila., 1997 WL 152790, at *4 (E.D. Pa. Mar. 28, 1997) (granting summary judgment where plaintiff has failed to "designate specifics facts, by use of affidavits, or answers to interrogatories, showing that there was a favorable termination of her criminal case").

Defendants' argument that Plaintiff's claim for malicious prosecution must be dismissed because Defendants had probable cause to issue the criminal complaint fails for the same reason.  Here, Plaintiff's and Defendants' allegations with respect to the circumstances of Plaintiff's original arrest are both contested.  Plaintiff further alleges that Defendants were aware that her actions were the result of a reaction to medication, and that she had no prior arrest record.  Defendant relies on facts that are not contained in the allegations of the Amended Complaint.  Where the determination of probable cause involves disputed facts, it is more suited for summary judgment than a motion to dismiss.  See, e.g., Underwood v. Commonwealth of Pa., 2006 WL 1147263, at *5 (E.D. Pa. Apr. 26, 2006) (denying motion to dismiss claim for malicious prosecution).  By contrast, in Pepiton v. City of Farrell, 2005 WL 2647953, at *3 (W.D. Pa. Oct. 17, 2005), a case relied upon by Defendants, the plaintiff's own allegation that he was driving a motor vehicle with an expired inspection sticker established probable cause as a matter of law for the plaintiff's

arrest.

Accordingly, I find that Plaintiff has met her burden of pleading a claim for malicious prosecution, and that Defendants are not entitled to dismissal of this claim at this stage of the proceedings.

C. QUALIFIED IMMUNITY

The Individual Defendants concede that, should the Court refuse to dismiss Count I of the Amended Complaint, then the issue of qualified immunity with respect to the alleged excessive force would require discovery. (Def. Br. at 20.) This same reasoning applies to Plaintiff's claim for malicious prosecution.

"Because Defendants have raised the defense of qualified immunity in the context of a Rule 12(b)(6) motion to dismiss, the only facts upon which the Court can properly rely in determining the 'objective reasonableness' of Defendants' belief that probable cause existed to arrest, detain and prosecute Plaintiff are those allegations of fact which are contained in the Amended Complaint." Garlanger, 223 F. Supp.2d at 608. However, the Individual Defendants base their entitlement to qualified immunity on a purported fact set forth in the Investigation Report, the "officer viewing the plaintiff with a firearm" (Def. Br. at 20), *not* in the Amended Complaint. Accordingly, I hold that the Individual Defendants are not entitled to qualified immunity at this stage.[3]

---

[3] I also reiterate Judge Brotman's admonition in Garlanger that "the Court is mindful of the need to determine immunity questions at the earliest possible stage in the litigation and makes no intimation regarding whether Defendants would, at the conclusion of a limited period of discovery, be able to establish their entitlement to qualified immunity on a motion for summary judgment." 223 F. Supp.2d at 608 n.6.

12

D. THE EXPUNGEMENT ISSUE

Defendants claim that, prior to commencing this action, Plaintiff sought and obtained expungement of her criminal record. According to Defendants, the only evidence which remains after expungement is the Investigation Report, with Plaintiff's name redacted. (Def. Br. at 19, n. 7.) Defendants argued that Plaintiff's actions in having her criminal record expunged, when she knew that she would be filing this civil action, resulted in the destruction of evidence that might assist Defendants in this case. Defendants believe that they therefore are entitled to dismissal of this action.

This is yet another evidentiary issue more suited for later resolution. Notwithstanding their argument above, Defendants have indicated that Plaintiff retains copies of her medical records, the criminal complaint, the affidavit of probable cause and "similar documents." Defendants have made no formal requests for discovery. It would be not only premature, but excessively harsh, to dismiss a case on this basis before discovery can demonstrate the significance, if any, of the potential loss. See, e.g., Positran Mfg., Inc. v. Diebold, Inc., 2003 WL 21104954, at *4 (D. Del. May 15, 2003) (denying dismissal of case prior to trial where the defendant had not established that the destroyed documents "are the only evidence available to prove its claims and adequately defend itself").

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORDER OF COURT**

AND NOW, this **2**nd day of October, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, Defendants' Motion to Dismiss the Amended Complaint (Docket No. [23]) is denied in its entirety.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge